```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA        :

          -v.-                  :
                                     10 Cr. 640 (PAC)
DAMIAN YOUNG and                :
KEITH DARLING,
                                :
          Defendants.
                                :
- - - - - - - - - - - - - - - - -x
```

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT DAMIAN YOUNG'S PRETRIAL MOTION**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Amy Lester
Assistant United States Attorney
     -Of Counsel-

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    I.    The Court Should Grant Young's Request For An
Evidentiary Haring With Respect To The Suppression
Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    Applicable Law . . . . . . . . . . . . . . . . . 5

            1.    Reasonable Suspicion . . . . . . . . . . . .5

            2.    Probable Cause . . . . . . . . . . . . . .8

        B.    Discussion . . . . . . . . . . . . . . . . . . .11

    II.   Young's Other Requests For Disclosure Should Be
Denied Or Dismissed As Premature . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to the pretrial motion filed by defendant Damian Young.  In particular, Young moves for (i) the suppression of physical evidence and statements recovered during and after his April 30, 2010 arrest in this case; (ii) the immediate disclosure of evidence that the Government may seek to introduce pursuant to Rule 404(b) at trial; and (iii) the disclosure of so-called Brady material.

As set forth in detail below, the Government respectfully submits that, with respect to Young's request for an order suppressing the evidence recovered during and after his arrest in this case, the Court should hold an evidentiary hearing regarding the disputed factual issues before it can resolve that aspect of the motion.  With respect to Young's request for the immediate disclosure of Rule 404(b) evidence, the Government will provide such disclosures as required by law and sufficiently in advance of any trial in this case.  With respect to Young's request for the disclosure of Brady material, that request is moot, as the Government has provided the defense with any Brady material that it has in its possession thus far, and, should the Government discover any additional material, will provide it as soon as possible.

**BACKGROUND**

Defendants Damian Young and Keith Darling (collectively, the "Defendants") are charged in Indictment 10 Cr. 640 (PAC) (the "Indictment") in five counts, as follows: (i) Count One charges Young and Darling with conspiring to commit robbery, on or about April 30, 2010, in violation of Title 18, United States Code, Section 1951; (ii) Count Two charges Young and Darling with attempting to commit a robbery, on or about April 30, 2010, in violation of Title 18, United States Code, Sections 1951 and 2; (iii) Count Three charges Young and Darling with using and carrying firearms, in connection with a crime of violence (the robbery conspiracy charged in Count One), on or about April 30, 2010, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2; (iv) Count Four charges Young with possessing a firearm, after previously having been convicted of a felony, on or about April 30, 2010, in violation of Title 18, United States Code, Section 922(g)(1); and (v) Count Five charges Darling with possessing a firearm, after previously having been convicted of a felony, on or about April 30, 2010, in violation of Title 18, United States Code, Section 922(g)(1). The Indictment was returned by a Grand Jury sitting in this District on July 21, 2010.

On May 5, 2010, the Defendants were charged in a criminal complaint (the "Complaint") based on the same offense

conduct charged in the Indictment.  As detailed in the Complaint and the discovery provided to the Defendants, on April 30, 2010, Young and Darling were observed by officers with the New York City Police Department (the "NYPD") as they were riding in a grey Jeep Cherokee (the "Jeep") in the area of 4643 Richardson Avenue, in the Bronx.  The NYPD officers had been following the Jeep for a few blocks, and had seen the driver (who they later learned to be Darling) commit several traffic infractions.  When the NYPD officers approached the Jeep, Darling was parking in the area of 4643 Richardson Avenue, and Young was in the passenger seat.  When the NYPD officers approached Young, they patted him down, and, when they did so, they felt what appeared to be a gun in the area of his waistband.  The NYPD officers recovered the item, which turned out to be a loaded 9mm Ruger semi-automatic pistol.  When the NYPD officers approached Darling, he struggled with the officers and attempted to hit them, but they eventually placed handcuffs on him.  The NYPD officers also found a duffel bag in the back of the Jeep, which contained, among other things, a loaded .40 caliber Ruger semi-automatic pistol and a roll of duct tape.

The Defendants were arrested, and after having been advised of and waiving their <u>Miranda</u> rights, both gave statements to the NYPD officers.  Among other things, both Defendants admitted that they had agreed to commit the robbery of a

3

marijuana dealer in the Bronx, New York.  Young admitted that he had been carrying a gun in his waistband and that there was another gun in the back of the Jeep, and Darling admitted that the person that he was with was carrying a gun in his waistband and that there was another gun in the back of the Jeep.

On or about August 20, 2010, the Government provided discovery to the Defendants.  Included in the discovery, among other things, were copies of the Indictment, the Complaint, arrest warrants, and writs in the case; photographs and property vouchers related to physical evidence recovered, such as the firearms, the Defendants' vehicle, and photographs of the Defendants; copies of requests for the laboratory examinations of physical evidence and the evidence collection report; reports and documents from the NYPD and the Bronx County District Attorney's Office related to the Defendants' arrest; summaries of the Defendants' post-arrest statements; and copies of reports relating to the Defendants' criminal histories.

In addition, by separate letter dated August 20, 2010, the Government provided the Defendants with a disclosure that, shortly before the NYPD officers approached the Defendants on April 30, 2010, the officers had received information from a source who provided specific information about a robbery that was about to occur in that area.  In particular, the source told the NYPD officers that two men were planning to carry out a robbery

of a marijuana dealer at 635 East 241st Street in the Bronx, New York (which is in the same vicinity as 2643 Richardson Avenue), that the two men would be arriving in that area, at that time, in a grey SUV, and that the man in the front passenger seat of the grey SUV was a clean-cut black male, who was wearing a red shirt.

**ARGUMENT**

**I.   The Court Should Grant Young's Request For An Evidentiary Hearing With Respect To The Suppression Issue**

The Government agrees that an evidentiary hearing is necessary with respect to the issue of whether the physical evidence and Young's post-arrest statements should be suppressed. However, the Government submits that, after the Court has heard the testimony presented at the hearing, it will be clear that the evidence was lawfully obtained and suppression is not warranted.

**A.   Applicable Law**

**1.   Reasonable Suspicion**

Police officers may conduct an investigatory stop -- commonly known as a "Terry stop" -- if they have a "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." United States v. Place, 462 U.S. 696, 702 (1983) (citing Terry v. Ohio, 392 U.S. 1, 22 (1968)). The test for reasonable suspicion is "rather lenient," United States v. Santana, 485 F.2d 365, 368 (2d Cir. 1973), "not a difficult one to satisfy," United States v. Oates, 560 F.2d 45,

5

63 (2d Cir. 1977), and requires "considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995) (internal quotation marks and citations omitted).  Reasonable suspicion entails "some minimal level of objective justification." United States v. Sokolow, 490 U.S. 1, 7 (1989).

In determining whether reasonable suspicion supported a stop, courts look to the totality of the circumstances to see whether the officer had a "particularized and objective basis" to suspect criminal activity.  United States v. Arvizu, 534 U.S. 266, 273 (2002) (quotation marks omitted).  The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry, 392 U.S. at 21.  While the officer may not rely on an "inchoate and unparticularized suspicion or 'hunch,'" Id. at 27, he is entitled to "draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person." United States v. Muhammad, 463 F.3d 115, 121 (2d Cir. 2006) (quoting Arvizu, 534 U.S. at 273 (alterations in original, internal quotation marks omitted)).  Therefore, courts evaluate the circumstances surrounding the stop "'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience

and training.'"  United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000) (quoting United States v. Oates, 560 F.2d 45, 61 (2d Cir. 1977)).  When evaluating the reasonableness of suspicion predicated on informant tips, courts must examine the totality of the circumstances.  Bayless, 201 F.3d at 133; see also United States v. Garcia, 339 F.3d 116, 118 (2d Cir. 2003) (finding reasonable suspicion based upon an informant's tip that cocaine would be sold at the location, a known narcotics trafficking area; the defendants' use of what appeared to be counter-surveillance; and the defendants exiting the building with a plastic bag containing a rectangular package).

      During a lawful stop, if the investigating officer has reason to believe that the detained individual is armed and dangerous, he may conduct a patdown search for concealed weapons, regardless of whether he has probable cause to arrest the individual for a crime.  Terry, 392 U.S. at 23-27.  "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."  Adams v. Williams, 407 U.S. 143, 146 (1972).  "[T]he suspect need not actually be dangerous . . . so long as the officer has a reasonable belief that the suspect poses a danger and may have a weapon within his reach."  McCardle v. Haddad, 131 F.3d 43, 48 (2d Cir. 1997).

**2.   Probable Cause**

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983); Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (same). To establish probable cause, "it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987) (quotation omitted); accord, e.g., United States v. Ginsberg, 758 F.2d 823, 828 (2d Cir. 1985). Rather, probable cause merely requires a "fair probability" under the "totality of the circumstances" that the defendant to be arrested has committed or is committing a crime. Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause exists "if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed." United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990).

Ultimately, "the probable cause standard 'does not deal with hard certainties, but with probabilities.'" United States v. Gaviria, 805 F.2d 1108, 1115 (2d Cir. 1986) (quoting Gates, 462 U.S. at 231).  It "is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Maryland v. Pringle, 540 U.S. 366 (2003) (quotations omitted).  Probable cause is "a fluid concept –- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232.  The evidence on which the arresting officer relies "'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" Cruz, 834 F.2d at 51 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)).

Probable cause for arrest is frequently based on information provided by a confidential informant and corroborated by law enforcement's surveillance of a suspect.  In Draper v. United States, 358 U.S. 307, 333 (1959), for example, the Supreme Court held that there was probable cause to arrest the defendant without a warrant based on a reliable informant's information that the defendant was selling drugs, that he would be returning to Chicago by train with drugs, and that he would be walking

9

fast.  Because the informant's physical description of the individual and the individual's walking behavior matched law enforcement's observations, the Court found that law enforcement had probable cause to believe that the informant's information that the defendant had drugs was likely true.  In United States v. Fox, 788 F.2d 905, 907-08 (2d Cir. 1986), the Second Circuit found that the warrantless arrest of an individual driving a red and white pickup truck was valid, because that truck had been seen on prior occasions at a drug-trafficking distribution point near the time of drug deals.  As the Court stated, "[v]iewed 'practically and in a commonsense fashion,' these facts were sufficient to establish probable cause to believe that the driver of the pickup truck had supplied the cocaine that was later seized by the police when they arrested the drug dealer [at the distribution point]."  Id.  Similarly, in United States v. Gonzalez, 835 F.2d 449, 451 (2d Cir. 1987), the Court upheld the warrantless arrest of the defendant, because the informant's information had proven reliable in the past, law enforcement was investigating the defendant for narcotics offenses, the informant's preliminary details about the defendant's plans to travel to a Miami airport to meet a woman in the evening matched law enforcement's observations, and Florida was a well known source of narcotics.  Under these circumstances, the agents were

warranted in believing that, as alleged by the informant, the defendant would be carrying cocaine.  Id.

    **B.   Discussion**

At this time, the Government anticipates calling NYPD Detective Gaetano (Guy) LaMazza to testify at the hearing about the circumstances leading to the arrest of the Defendants.  As already disclosed to the Defendants in its August 20, 2010 letter described above, the Government expects that the testimony of Detective LaMazza will establish that the NYPD received information from a source on the day of the Defendants' arrest that two men traveling in a grey SUV were planning to commit a robbery that day of a marijuana dealer at 635 East 241st Street in the Bronx.  The source also provided a physical description of the passenger in the SUV.  The information provided by the source was corroborated by the NYPD officers' observation of the Defendants in the grey Jeep in the vicinity of the robbery location a short time after the information was received.  Thus, at the very least, this information provided the officers with reasonable suspicion to conduct a Terry stop of Young and a patdown search of his person.  In addition, the Government submits that the officers' recovery of the gun from Young's waistband, and Darling's response to the officers (i.e., struggling and attempting to hit them), in combination with the information received from the source, further provided the

officers with probable cause to arrest both Defendants.

## II. Young's Other Requests For Disclosures Should Be Denied Or Dismissed As Premature

Young also requests various other disclosures such as the disclosure of Rule 404(b) acts and for exculpatory or <u>Brady</u> material.  At the outset, the Government notes that it has, as described above in the Background section of this Memorandum, already produced discovery to both Defendants pursuant to Federal Rule of Criminal Procedure 16.[1]  In any event, as set forth below, because Young's additional discovery requests are either moot, premature, or not required by any statute or the Federal Rules of Criminal Procedure, the Government respectfully submits that these requests be denied, except to the extent that the Government agrees to provide the materials on the following proposed schedule.

Two weeks prior to the commencement of any trial in this case, a date for which has not yet been set by the Court, the Government will provide notice of any Rule 404(b) evidence that it will seek to introduce at trial.

The Government acknowledges its continuing obligation to disclose <u>Brady</u> material, and the fact that it must provide

---

[1] Of course, the Government recognizes that its obligation to provide discovery is of a continuing nature, and the Government will, if it obtains additional evidence, supplement its production of material required by Rule 16(a)(1)(A) or any other provision of Rule 16.

12

Brady and Giglio material "in time for its effective use at trial."  United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001).  As stated in the Government's discovery letter to defense counsel, the Government is unaware of any Brady material in this case, but will provide timely disclosure when and if any such material comes to light.

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Young's pretrial motion, with the exception of Young's request to suppress evidence from his April 30, 2010 arrest.  As to that aspect of the motion, the Government consents to an evidentiary hearing, at which the Government submits that the testimony presented will demonstrate that the evidence was seized lawfully and that Young's request to suppress any physical or statement evidence should be denied in its entirety.[2]

Dated:   New York, New York
         December 30, 2010

                            Respectfully submitted,

                            PREET BHARARA
                            United States Attorney for the
                            Southern District of New York


                       By:    /s/
                            Amy Lester
                            Assistant United States Attorney
                            (212) 637-2416

---

[2] The Government respectfully requests that it be permitted to submit post-hearing briefing regarding the application of the facts elicited at the hearing to the relevant legal standards, if necessary.

14

**AFFIRMATION OF SERVICE**

AMY LESTER, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. That, on December 30, 2010, I caused the Government's Memorandum of Law in Opposition to Defendant Damian Young's Pretrial Motion to be delivered by ECF to all counsel of record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  New York, New York
        December 30, 2010

                                    ___/s/_____
                                    Amy Lester