UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA                          :
                                                  :         10-cr-00640-PAC-2
         - against -                              :
                                                  :         **ORDER & OPINION**
KEITH DARLING,                                    :
         Defendant.                               :
------------------------------------------------------------X

Nine years ago, this Court sentenced Keith Darling ("Darling") to 200 months' imprisonment after he pled guilty to charges related to an attempted Hobbs Act robbery. Because he contracted COVID-19 in prison, Darling brings this motion *pro se* asking for "home detention" while the Court resolves his motion under 28 U.S.C. § 2255 (the "§ 2255 motion"). Mot. 1, ECF No. 92. The Court construes his request as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

Darling is a 52-year-old African-American man. He contracted COVID-19 in August 2020 during his confinement at FCI Bennettsville due to the Bureau of Prisons' ("BOP") negligence, and he fears health complications due to his "ethnic heritage." Mot. 1. Darling argues that these circumstances, along with the strength of his pending § 2255 motion, constitute extraordinary and compelling circumstances such that he should be released. Letter in Supp. 2–3, ECF No. 95. The Government acknowledges that certain ethnic and racial groups experience a disparate impact from COVID-19, but argues that membership in such a class does not render Darling inherently more susceptible than others to problems from COVID-19. Opp'n 7, ECF No. 93. The Government argues further that Darling's pending § 2255 motion is irrelevant to this Court's resolution of his motion for compassionate release, and that extraordinary and

1

compelling reasons therefore do not exist in this case. Suppl. Opp'n 1–4, ECF No. 96. Finally, the Government contends that even if Darling raised extraordinary and compelling reasons for a sentence reduction, the Court should deny his request because granting early release would undermine the relevant factors in § 3553(a)—particularly the need to protect the public from Darling, the need to deter Darling from future criminal conduct, and the need to avoid sentencing disparities given the nature and circumstances of the offense and Darling's history while incarcerated. Opp'n 7–8.

For the reasons discussed below, Darling's motion is DENIED without prejudice to its renewal should Darling's health or conditions at his detention facility materially change.

## BACKGROUND

The Government charged Darling in a five-count indictment filed on July 21, 2010 (the "Indictment"). ECF No. 12, at 1–4. The Indictment charged Darling with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 ("Count One"); attempt to commit Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2 ("Count Two"); using, carrying, and possessing a firearm in connection with Counts One and Two and in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 ("Count Three"); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) ("Count Five"). *Id.* The charges were all in connection with an attempt to rob a marijuana dealer in the Bronx, New York. *Id.* at 1–2.

Without the benefit of a plea agreement, Darling pled guilty to Counts One, Two, Three, and Five on June 23, 2011. Minute Entry dated June 23, 2011; Presentence Investigation Report dated Sept. 14, 2011 ("PSR") ¶ 9. On June 6, 2012, this Court principally sentenced Darling to 140 months' imprisonment on Counts One and Two, to run concurrently, followed by 60 months on Counts Three and Five, to run concurrently with each other and consecutive to the sentence

on Counts One and Two—200 months' imprisonment total. Sent'g Tr. at 19:5–8, ECF No. 86-2, Ex. B. Darling filed a notice of appeal on June 11, 2012, ECF No. 50, and the Second Circuit affirmed the judgment in 2013. *United States v. Darling*, 519 F. App'x 58, 59 (2d Cir. 2013). On December 21, 2015, Darling moved for relief under 28 U.S.C. § 2255. ECF No. 67. The Court resolves Darling's § 2255 motion in a separate order.

On August 17, 2020, Darling wrote the Court a letter for "COVID-19 compassionate release"—specifically, Darling requests "home detention" with his wife at their home on Staten Island until this Court resolves his § 2255 motion. Mot. 1. The Government interprets Darling's letter as a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), Opp'n 1, and the Court independently concludes the same. Darling raises only one changed circumstance since his sentencing: his contraction of COVID-19 during his incarceration. Mot. 1; Letter in Supp. 2–4. Through his counsel's supplement, Darling seeks "a sentence reduction to time served, a period of home confinement, or a lesser term of incarceration." Letter in Supp. 1.

## DISCUSSION

### I. Applicable Law

#### A. *Pro Se* Motions

*Pro se* filings are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Thus, a court must "interpret them to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Darling, however, is represented by two very capable Federal Defenders, and he is not entitled to enjoy their representation some of the time but "slip into pro se mode for selected presentations." *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir. 2016). Nevertheless, because Darling's counsel has adopted his

3

motion, the Court will entertain it. *See United States v. Crumble*, No. 18-cr-32, 2018 WL 3112041, at *4 (E.D.N.Y. June 25, 2018).

### B. Compassionate Release Standard

Generally, courts are not permitted to modify prison sentences once they have been imposed. *United States v. Marriott*, No. 18 CR 00339, 2020 WL 4883805, at *1 (S.D.N.Y. Aug. 19, 2020). 18 U.S.C. § 3582(c), however, provides a limited exception to this general rule and permits a district court to "reduce the term of imprisonment" where the court finds "extraordinary and compelling circumstances." 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Franco*, No. 12 CR 932, 2020 WL 4344834, at *1 (S.D.N.Y. June 24, 2020). As an initial matter, incarcerated persons moving for compassionate release must satisfy a statutory exhaustion requirement before they can bring their motions in federal court. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or [wait for] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* If the defendant satisfies this exhaustion requirement, the court can then consider whether the defendant has shown "extraordinary and compelling circumstances" warranting a reduced sentence. *Id.* Before granting the motion, the court must consider the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* Thus, even if the defendant demonstrates extraordinary and compelling circumstances, the court may deny the motion if granting a sentence reduction would compromise the sentencing factors set forth in § 3553(a). *See United States v. Fisher*, No. 1:83 CR 00150-1, 2020 WL 5992340, at *4 (S.D.N.Y. Oct. 9, 2020).

District courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). The only constraint is that courts may not consider rehabilitation alone to be an extraordinary and compelling reason. *Id.* at 237–38. In practice, courts in this district have, considering the impact of COVID-19, engaged in a case-specific, fact-intensive inquiry into the defendant's health conditions and ability to manage those conditions in prison, the defendant's age, and "whether a reduction would compromise the goal of the imposed sentence," among other things. *Marriott*, 2020 WL 4883805, at *2 (quoting *United States v. Van Praagh*, No. 1:14 CR 00189-1, 2020 WL 3892502 at *3 (S.D.N.Y. July 10, 2020); *United States v. Brady*, No. S2 18 CR 316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020).

## II. Application

### 1. Exhaustion

Darling satisfied the exhaustion requirement by submitting a request for a sentence reduction to the BOP on April 5, 2020, which his warden denied on June 1, 2020. Opp'n 4. Consequently, the Court finds Darling's motion procedurally proper.

### 2. Extraordinary and Compelling Circumstances

Upon careful review of the reasons Darling has set forth, the Court does not find extraordinary and compelling circumstances warranting a sentence reduction. While the parties do not dispute that Darling has contracted COVID-19 in prison, it appears that he has recovered from the measurable effects of that infection, aside from a lingering cough. Opp'n 4, 7; Letter in Supp. 2. Because he has been infected and has recovered, Darling's risk of reinfection is

5

"extremely low."[1] Darling's condition is currently stable, and he has not presented any evidence that he has been unable to manage the infection in prison. *See Brady*, 2020 WL 2512100, at *3; *United States v. Kosic*, No. 18 CR 30, 2020 WL 3100459, at *2 (S.D.N.Y. June 11, 2020). Other courts in this district have found a lack of extraordinary and compelling circumstances where defendants, like Darling, contracted COVID-19, recovered, and were in stable condition. *See, e.g., United States v. Decker*, No. 17 CR 0738, 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020) (denying compassionate release to defendant who had unstable blood pressure and hypertension, but suffered no adverse effects from COVID-19 infection); *United States v. Zubkov*, No. 14 CR 773, 2020 WL 2520696, at *1, *5 (S.D.N.Y. May 18, 2020) (denying compassionate release to 52-year-old defendant who had sleep apnea and a heart condition, but had recovered from COVID-19 infection); *cf. United States v. Barajas*, No. 18-CR-736-04, 2020 WL 3976991, at *9–10, *12 (S.D.N.Y. July 13, 2020) (granting compassionate release to defendant who was infected with COVID-19, received poor treatment in prison, and presented evidence that he suffered from asthma).

Darling has no underlying health conditions that put him at an increased risk of harm from his COVID-19 infection, *see* Opp'n 4, and he has not shown a particularized risk of harm to himself. There is evidence that the COVID-19 pandemic statistically has a disparate impact on African-American individuals.[2] Darling, as an African-American, is thus in a group that is,

---

[1] *United States v. Alamo*, No. 19 Cr. 640, 2021 WL 1904975, at *4 (S.D.N.Y. May 12, 2021) (citation omitted); *see also United States v. Lewis*, No. 10-CR-392-10, 2021 WL 1873154, at *1 (S.D.N.Y. May 10, 2021) ("Reinfection, while not impossible, is rare, according to the CDC.")
[2] The CDC's guidance suggests that it is not membership in a minority race or ethnicity per se that puts an individual within that group at higher risk, but rather that social inequities interact with race and ethnicity such that minority groups as a whole are disproportionately affected by COVID-19 due to lack of access to healthcare and income inequality, *inter alia*. CDC, *Coronavirus Disease—Health Equity Considerations & Racial & Ethnic Minority Groups*

6

overall, at higher risk of experiencing adverse health effects relating to COVID-19. Additionally, while not in the most at-risk age categories, Darling, at 52, is more at risk than someone in his forties.[3] *Compare United States v. Cucciniello*, No. 1:18 CR 00030-9, 2020 WL 5836418 at *1, *3 (S.D.N.Y. Oct. 1, 2020) (denying compassionate release motion brought by 26-year-old defendant with no underlying health conditions) *with Fisher*, 2020 WL 5992340, at *3–4 (granting compassionate release motion brought by 73-year-old defendant with underlying health conditions). But while Darling has demonstrated that he is a member of relatively at-risk categories, he has not shown a risk of harm from COVID-19 that is specific to him as opposed to all African-Americans and all people in their 50s. *Compare Van Praagh*, 2020 WL 3892502, at *4 (granting compassionate release to defendant with HIV, stating that the medical care he received in prison did not ameliorate his particularized risk) *with United States v. Kaba*, No. 19 CR 242, 2020 WL 2520807, at *2–*3 (S.D.N.Y. May 18, 2020) (denying compassionate release to defendant who had no underlying medical conditions and was not sick, whose motion "hinge[d] predominately on his status as an inmate during the COVID-19 pandemic").

Darling represents that he is experiencing "intense anxiety and fear" over the potential long-term effects of his COVID-19 infection, which is taking an "emotional and psychological toll" on him. Letter in Supp. 2–3. Darling's emotions are undoubtedly sincere, but they cannot be dispositive. Instead, the Court must apply the law as Congress has written it and grant a reduction only if Darling shows extraordinary and compelling circumstances. He has not done

---

(updated Apr. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html.

[3] *See* CDC, *Coronavirus Disease—Older Adults*, Centers for Disease Control and Prevention (updated May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

so.[4] Darling "offers no substantive rationale for why he would be any better off at his home on Staten Island," where his fears about the long-term effects of his infection, though perhaps soothed, will remain unresolved. *Brady*, 2020 WL 2512100, at *4.

Even if Darling had established extraordinary and compelling circumstances, the Court would deny Darling a sentence reduction, because the applicable sentencing factors of 18 U.S.C. § 3553(a) weigh against it.

### 3. § 3553(a) Factors

Darling has served approximately three quarters, or 148 months, of his 200-month sentence. *See* Letter in Supp. 3. While courts in this district have granted compassionate release to defendants who, like Darling, have served a significant portion of their sentences, granting Darling's motion now would undermine the deterrence objectives of § 3553(a). *See Van Praagh*, 2020 WL 3892502, at *4, *6; *United States v. Anderson*, No. 16 CR 824-1, 2020 WL 2301199, at *1 (S.D.N.Y. May 8, 2020); *United States v. Ozols*, No. 16 CR 692-7, 2020 WL 2849893, at *2 (S.D.N.Y. June 2, 2020). In the first place, Darling's 200-month sentence represents a substantial break. His Sentencing Guidelines range was 262 to 327 months' imprisonment. Sent'g Tr. at 18:1–4; PSR ¶ 9(d). Probation recommended 262 months, and the Government requested "a lengthy sentence within the Guidelines range." PSR at 22; Sent'g Tr. at 10:12–13. But the Court determined that such a lengthy sentence was not warranted. *See* Sent'g Tr. at 18:4–5 ("I think that's way too much time.") The Court considered the gravity of the offense, the need to promote respect for the law, and the need to deter Darling and others from criminal conduct, especially where, as here, the crimes are committed while the defendant is on

---

[4] Darling's argument that the strength of his § 2255 motion constitutes extraordinary and compelling circumstances is unavailing. Even if the Court should consider it, notwithstanding the fact that § 2255 provides its own mechanism for relief, his § 2255 motion is not strong.

8

supervised release. *Id.* at 18:14–24. The Court also considered, however, Darling's age, letters his family sent on his behalf, and his efforts at rehabilitation prior to committing the instant offense. *Id.* at 9:16–17, 16:16–17, 16:4–5, 17:15–17, 18:10–12. Ultimately, the Court sentenced Darling to 200 months' imprisonment total, well below the bottom of the applicable Sentencing Guidelines range. *Id.* at 19:5–9. This is not the first break that Darling has gotten at sentencing: he previously received a sentence of only six years on a conviction involving murder and racketeering for which he could have been sentenced to life imprisonment. *Id.* at 9:24–10:5, 12:8–10; PSR at 23. The Court recognized that Darling had squandered that second chance (Sent'g Tr. at 12:11–12), but nonetheless gave him another chance. Unfortunately, Darling has not made the most of that opportunity.

Darling has served more than 11 years in prison for the instant offense. Despite his long prison stay, Darling has not used that time to demonstrably rehabilitate himself or improve the situation of his fellow prisoners. *Contra Fisher*, 2020 WL 5992340 at *3 ("For almost four decades [in prison], Fisher dedicated himself to his education, earned multiple degrees, and kept his distance from violence and drugs while maintaining family relationships and helping fellow inmates."). Instead, as the Government points out, Darling has incurred no less than six disciplinary infractions during his 140-month period of incarceration, each resulting in the loss of good conduct time. Opp'n 4 (citing BOP Disciplinary Record for Keith Darling dated Sept. 10, 2020 at 1–4). While the infractions are not fresh, three of them involve violent conduct (swinging arms when asked to prepare for handcuffing; fighting another inmate; assaulting another inmate), and the most recent infraction, in March 2018, was for "possess[ing] a hazardous tool." *Id.* Darling's prior criminal conduct, including violent crimes, led this Court to impose a sentence designed to deter Darling from committing further crimes in the future. His

9

conduct since that sentencing demonstrates his need for continued deterrence. *Cf. Van Praagh*, 2020 WL 3892502, at *5 ("The need to provide specific deterrence and protect the public . . . must be considered in light of Van Praagh's prison record, which demonstrates a sincere, sustained effort to turn his life around. Van Praagh has had no disciplinary infractions during his incarceration.").

The Court is also mindful of the need to avoid sentencing disparities. The Court sentenced Darling's co-defendant, Damian Young, who had a history similar to Darling's and engaged in comparable conduct in the instant offense, to 195 months' imprisonment. PSR at ¶¶ 17–18; Judgment 2, ECF No. 55. The Government argues that granting Darling a sentence reduction would create an inappropriate disparity between his sentence and Young's sentence. Opp'n 8. Darling contends that this argument is "unsupportable," as the Government has produced no evidence of Young's present circumstances and how they might differ from Darling's. Letter in Supp. 4. But this argument fails to recognize that it is Darling who bears the burden of proving that he is entitled to relief under § 3582(c)(1)(A)(i). *United States v. Morel*, No. 10 CR 798, 2020 WL 3412907, at *3 (S.D.N.Y. June 22, 2020). Accordingly, it is up to Darling to rebut the Government's argument, which does facially establish that granting Darling a sentence reduction would create a disparity between Darling and Young.

Finally, because Darling's crime was serious and not an isolated incident, the Court designed Darling's sentence to promote respect for the law. Darling's subsequent acts of violence in prison and disregard for the rules demonstrate that that objective, too, remains unfulfilled.

## CONCLUSION

Darling's motion for compassionate release is DENIED without prejudice as to its renewal should his medical condition or the conditions at FCI Bennettsville materially worsen. The Clerk of Court is directed to close the motion at ECF number 92.

Dated: New York, New York
      May 24, 2021

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge